UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

STEPHEN WEEKS,

        Plaintiff,

v.                          Case No.: 8:21-cv-2384-VMC-SPF

EQUIFAX INFORMATION
SERVICES, LLC,
TRANS UNION, LLC,
TRUIST BANK, INC., and
DOES 1-100,

        Defendants.

_____/

**ORDER**

    This cause comes before the Court pursuant to the Motion to Dismiss filed by Defendant Trans Union LLC on December 20, 2021 (Doc. # 36) and the Motion to Dismiss filed by Defendant Truist Bank on December 31, 2021. (Doc. # 39). Plaintiff Stephen Weeks has responded to both Motions, and both Defendants each filed a reply. (Doc. ## 45, 46, 55, 57). For the reasons given below, the Motions are granted.

**I.**   **Background**

    On October 11, 2021, Weeks initiated this lawsuit, alleging that Defendants Equifax Information Services, LLC,

Trans Union, and Truist Bank[1] violated his rights under the Fair Credit Reporting Act ("FCRA"). (Doc. # 1). Weeks alleges that his account at Truist Bank (the "Account") "was fully satisfied in or about January of 2018, and as such is not currently past due." (Id. at ¶ 10). According to Weeks, however, Truist Bank incorrectly reported the Account as having a "currently past due payment status." (Id. at ¶ 11). Weeks noticed this "inaccurate, misleading, or incomplete" information when he ordered his credit report from the three leading Credit Reporting Agencies ("CRAs") in January 2021. (Id. at ¶¶ 54-55).

In April 2021, Weeks sent letters disputing this information to Equifax and Trans Union, who in turn allegedly alerted Truist Bank to the dispute. (Id. at ¶¶ 56-60). Despite having knowledge of the dispute, Truist Bank continued to report the Account to Equifax and Trans Union with an incorrect "current payment" status. (Id. at ¶¶ 62-63). Specifically, Equifax listed the Account as "Not more than two payments past due" and Trans Union listed the Account as "30 days past due." (Id.). Weeks alleges that Truist Bank

---

[1] Weeks brings suit against Truist Bank as the successor in interest to SunTrust Bank. (Doc. # 1 at ¶ 2).

both failed to investigate whether the Account was paid in full and failed to accurately update the tradeline. (Id. at ¶¶ 64-66).

According to the Complaint, this information "appears to third parties viewing [Weeks's] credit report that the account was not fully paid and fully satisfied but is instead still past due and outstanding, which is patently incorrect." (Id. at ¶ 70). Weeks further alleges that this incorrect reporting is being used to calculate his credit score, which could impact his creditworthiness. (Id. at ¶¶ 71-72).

Based on these allegations, Weeks brings the following causes of action: (1) violation of the FCRA, 15 U.S.C. § 1681e(b), as to Trans Union and Equifax, by "failing to establish and/or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports" (Count One); (2) violation of the FCRA, 15 U.S.C. § 1681i(a)(1), as to Trans Union and Equifax, by failing to reinvestigate the disputed information (Count Two); (3) violation of the FCRA, 15 U.S.C. § 1681i(a)(4), as to Trans Union and Equifax, by failing to review and consider all relevant information (Count Three); (4) violation of the FCRA, 15 U.S.C. § 1681i(a)(5)(A), as to Trans Union and Equifax, by failing to delete disputed and inaccurate

information (Count Four);  and (5) violation of the FCRA, 15 U.S.C. § 1681s-2(b), as to Truist Bank (Count Two). (Id. at 9-16).

On December 20, 2021, Trans Union filed its Motion to Dismiss. (Doc. # 36). Truist Bank filed its Motion to Dismiss on December 31, 2021. (Doc. # 39). The two Motions to Dismiss are fully briefed (Doc. ## 45, 46, 55, 57) and are ripe for review. Trans Union has also filed a motion to strike Weeks's response and an exhibit thereto, to which Weeks has responded. (Doc. ## 56, 62).

Equifax, after filing an answer, first filed a notice of joinder in Trans Union's Motion and then a motion to join into Truist Bank's Motion. (Doc. ## 41, 48, 54). Weeks has objected to Equifax's attempt to join into both Motions. (Doc. ## 60, 61).

## II.  <u>Legal Standard</u>

On a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. <u>Jackson v. Bellsouth Telecomms.</u>, 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the

complaint. <u>Stephens v. Dep't of Health & Human Servs.</u>, 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (citations omitted); <u>see also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986).

Generally, when considering a motion to dismiss under Rule 12(b)(6), the Court must limit its consideration to well-pled factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. <u>La Grasta v. First Union Sec., Inc.</u>, 358 F.3d 840, 845 (11th Cir. 2004). Trans Union attached the Trans Union credit report to its Motion and Truist Bank attached the "reinvestigation results" from Equifax (which the Court will refer to as the Equifax credit report) to its Motion. (Doc. ## 36-2, 39-1). The Court

will consider the credit reports because they are central to Weeks's claims and repeatedly referenced in the Complaint. See <u>SFM Holdings, Ltd. v. Banc of Am. Secs., LLC</u>, 600 F.3d 1334, 1337 (11th Cir. 2010).

Although Weeks objects to the "credit disclosures" provided by Defendants, he takes issue with the fact that his complaint cites to "credit reports" which, he claims, are different from "credit disclosures." The Court agrees with Defendants that the documents provided by Trans Union and Truist Bank in support of their Motions are the physical manifestation of the credit files and tradelines that are central to Weeks's complaint. See <u>Lacey v. TransUnion, LLC</u>, No. 8:21-cv-519-02-JSS, 2021 WL 2917602, at *2 n.1 (M.D. Fla. July 12, 2021) (considering Defendant's disclosure referred to as a "credit report"). Weeks provides no other reason to doubt the authenticity of the documents cited and provided by Defendants. Thus, the Court may properly consider these documents in deciding the Motions to Dismiss.

III. **<u>Analysis</u>**

A. **<u>Equifax's attempted joinder</u>**

On January 10, 2022, Equifax filed its answer to the complaint. (Doc. # 41). Ten days later, Equifax filed a document stating that it wished to join Trans Union's Motion

to Dismiss. (Doc. # 48). And on February 3, 2022, Equifax filed a motion for joinder into Truist Bank's Motion to Dismiss. (Doc. # 54).

Pursuant to Federal Rule of Civil Procedure 12(b), "[a] motion asserting any of [the defenses listed in the Rule] *must be made before* pleading." Fed. R. Civ. P. 12(b) (emphasis added). An answer is a required responsive pleading. Fed. R. Civ. P. 7(a)(2), 12(a)(1). Accordingly, in this Circuit, courts will reject or disregard a motion to dismiss that is filed after an answer. See Leonard v. Enter. Rent a Car, 279 F.3d 967, 971 n.6 (11th Cir. 2002) ("After answering the complaint, the defendants filed Rule 12(b)(6) motions to dismiss the plaintiffs' claims. Under Rule 12(b), these motions were a nullity; by filing an answer, the defendants had eschewed the option of asserting by motion that the complaint failed to state a claim for relief."); Skrtich v. Thornton, 280 F.3d 1295, 1306 (11th Cir. 2002) ("In this case, because a responsive pleading — an answer — had been filed, under the plain language of Rule 12(b), a motion to dismiss would have been inappropriate. Rule 12(b) provides that all defenses must be asserted either (1) in a responsive pleading, or (2) by motion under Rule 12(b) before interposing a responsive pleading if one is due."); see also Neelu Aviation,

<u>LLC v. Boca Aircraft Maint., LLC</u>, No. 18-cv-81445, 2019 WL 4345685, at *2 (S.D. Fla. Sept. 12, 2019) (refusing to consider motion to dismiss because, by first filing an answer, the defendant "forfeited its opportunity to argue for dismissal through the procedural mechanism of a motion to dismiss").

The Court sees no reason to deviate from this rule simply because Equifax was attempting to join into its co-Defendants' Rule 12(b)(6) Motions to Dismiss instead of filing its own Motion to Dismiss, especially as Trans Union filed its Motion to Dismiss before Equifax's responsive pleading came due. <u>See</u> <u>Williams v. Educ. Credit Mgmt. Corp.</u>, No. 8:14-cv-1254-CEH-TBM, 2015 WL 493767, at *1 (M.D. Fla. Jan. 14, 2015) (rejecting defendant's attempt to join a co-defendant's motion to dismiss where defendant had already filed an answer "precluding it from bringing any such motions" under Rule 12(b)).

Therefore, Defendant Equifax's Motion for Joinder into Truist Bank's Motion to Dismiss is due to be denied and its attempt to join into Trans Union's Motion to Dismiss is similarly ineffective. Equifax's answer stands, and this case will proceed as to Equifax.

**B.**   **Trans Union's Motion to Dismiss**

The FCRA requires a credit reporting agency ("CRA"), such as Trans Union, to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). It also requires a CRA to "conduct a reasonable reinvestigation" if the consumer disputes the accuracy or completeness of any information in their credit file "to determine whether the disputed information is inaccurate." 15 U.S.C. § 1681i(a)(1)(A). In conducting that reinvestigation, a CRA must "review and consider all relevant information submitted by the consumer." Id. § 1681i(a)(4). If, after the reinvestigation, any disputed information is found to be inaccurate or incomplete, the CRA must promptly delete or modify that information from the file. Id. § 1681i(a)(5)(A).

Weeks's claims against Trans Union require him to plead and prove an inaccuracy in his credit report. "To state a claim under [Section] 1681e, the plaintiff must show that the agency's report contained factually inaccurate information, that the procedures it took in preparing and distributing the report weren't 'reasonable,' and that damages followed as a result." Losch v. Nationstar Mortg. LLC, 995 F.3d 937, 944

(11th Cir. 2021); Cahlin v. Gen. Motors Acceptance Corp., 936
F.2d 1151, 1156 (11th Cir. 1991) ("In order to make out a
prima facie violation of [Section 1681e(b)] the Act
implicitly requires that a consumer must present evidence
tending to show that a credit reporting agency prepared a
report containing 'inaccurate' information."). "The elements
of a claim under [Section] 1681i — which focuses on the
consumer's credit 'file' rather than his credit 'report' —
are the same, except that the plaintiff needn't show that the
agency prepared and distributed a report." Losch, 995 F.3d at
944. "Accurate reporting is a complete defense to both a
1681e(b) claim and a 1681i claim." Schuh v. Am. Express Bank,
FSB, No. 17-24345-CIV, 2018 WL 3751467, at *3 (S.D. Fla. May
3, 2018), report and recommendation adopted, No. 17-CV-24345,
2018 WL 3730226 (S.D. Fla. May 31, 2018).

The Eleventh Circuit recently explained what "maximum
possible accuracy" means under the FCRA – the information
"must be factually true and also unlikely to lead to a
misunderstanding." Erickson v. First Advantage Background
Servs. Corp., 981 F.3d 1246, 1252 (11th Cir. 2020). Whether
a report is "misleading" is an "objective" question. Id. "If
a report is so misleading that it is objectively likely to

10

cause the intended user to take adverse action against its subject, it is not maximally accurate. On the other hand, the fact that some user somewhere could possibly squint at a report and imagine a reason to think twice about its subject would not render the report objectively misleading." Id. When evaluating claims of inaccurate or false information in a credit report, "the report must be reviewed and considered in its entirety, instead of focusing on a single field of data." Lacey, 2021 WL 2917602, at *4.

Trans Union attached to its Motion to Dismiss a copy of Weeks's Trans Union credit report. (Doc. # 36-2). An excerpt of the relevant portion of that report is reproduced below:

**SUNTRUST BANK #**[redacted]**** (PO BOX 85526, RICHMOND, VA 23285, (877) 596 5407)

| | | | |
|---|---|---|---|
| Date Opened: 07/06/2013 | Balance: $0 | Pay Status: ›Paid, Closed: was 30 days past due date‹ |
| Responsibility: Individual Account | Date Updated: 01/16/2018 | Terms: Monthly for 72 months |
| Account Type: Installment Account | Payment Received: $3,748 | Date Closed: 01/16/2018 |
| Loan Type: AUTOMOBILE | Last Payment Made: 01/16/2018 | ›Maximum Delinquency of 30 days in 12/2017 |
| | High Balance: $10,665 | and in 01/2018‹ |
| | Original Charge-off: $0 | |

Remarks: CLOSED
Estimated month and year that this item will be removed: 11/2024

| | 12/2017 | 11/2017 | 10/2017 | 09/2017 | 08/2017 | 07/2017 | 06/2017 | 05/2017 | 04/2017 | 03/2017 | 02/2017 | 01/2017 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | 30 | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | |

| | 12/2016 | 11/2016 | 10/2016 | 09/2016 | 08/2016 | 07/2016 | 06/2016 | 05/2016 | 04/2016 | 03/2016 | 02/2016 | 01/2016 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | |

| | 12/2015 | 11/2015 | 10/2015 | 09/2015 | 08/2015 | 07/2015 | 06/2015 | 05/2015 | 04/2015 | 03/2015 | 02/2015 | 01/2015 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | |

| | 12/2014 | 11/2014 | 10/2014 | 09/2014 | 08/2014 | 07/2014 | 06/2014 | 05/2014 | 04/2014 | 03/2014 | 02/2014 | 01/2014 | 12/2013 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK | OK |

The document reflects that the account was 30 days past due as of December 2017. (Id. at 4). The "pay status" field lists "Paid, Closed: was 30 days past due date." The account was last updated and closed on January 16, 2018, with a $0 balance. Under "Remarks," the account shows "CLOSED." (Id.).

Here, when viewing the Trans Union credit report in its entirety, it is readily apparent that the Account is accurate and not misleading. The Trans Union report clearly states that the Account (1) is "paid" and "closed"; (2) that the account "was" 30 days past due as of December 2017; (3) has a balance of $0; and (4) was closed on January 16, 2018.

Viewing the credit report objectively and in its entirety, the only reasonable reading of the Account is that the account was past due in January 2018, at which time the account was updated one last time and closed – zeroing out the balance. It does not indicate, as Weeks argues, that the Account is *currently* 30 days past due. See O'Neal v. Equifax Info. Servs., LLC, et al., No. 21-cv-80968-RAR, 2021 WL 4989943, at *3 (S.D. Fla. Oct. 27, 2021) (pointing out that, under nearly identical facts, "there is no possible way that a reasonable creditor would believe that Plaintiff was 120 days late on a $0 balance").

Other courts in this District have reached similar conclusions on similar facts. See Lacey, 2021 WL 2917602, at *6 ("[W]hen Plaintiff Lacey's credit report is viewed in its entirety, it is clear that it was accurately reported and is not misleading. On its face, the credit report reflects that as of August 7, 2015, the account: (1) had a balance of $0;

(2) was last updated on August 7, 2015; (3) was closed on that same date; (4) was 120 days past due from June 2015 through August 7, 2015; and (5) was foreclosed with collateral sale. Objectively, no reasonable creditor looking at the report would be misled into believing that Plaintiff Lacey had a present pending amount due."); Smith v. Transunion, LLC, No. 6:21-cv-349-GAP-LRH, 2021 WL 3111583, at *2 (M.D. Fla. July 1, 2021) ("When viewed in its entirety, Trans Union's reporting of the Account is neither inaccurate nor materially misleading. The report shows a pay status that is 60 days past due, but also shows that the Account was fully paid off and closed, leaving a $0 balance. Smith does not deny that she was at least 60 days past due when she paid off the Account or otherwise claim that there was any factual error in the report. Smith nevertheless argues that the pay status section, which shows that the Account was 60 days past due at the time it was closed, is materially misleading because a creditor viewing the report may believe the Account is still open and overdue. But the pay status section reflects historical information regarding a past delinquency and does not suggest that the Account is still open and past due. Indeed, the Account clearly notates that it is closed and that 60 days is simply the maximum delinquency that occurred

13

during the Account's history. Therefore, the report is not misleading as a matter of law, and that no reader would mistakenly believe the Account is somehow still open."); Pineda v. Trans Union, LLC, No. 2:21-cv-653-SPC-MRM, 2021 WL 5798282, at *2 (M.D. Fla. Dec. 7, 2021) ("But looking objectively at the report as a whole (not just at the 'Pay Status' field as Pineda urges), it is not materially misleading. The 'Pay Status' field reflects historical information. The first page of the report explains that for closed accounts (such as the Habitat account), the 'Pay Status' field represents the last reported status of the account. The 'Pay Status' field does not say that it represents the current status of the account. The report notes that the Habitat account is closed and that 30 days is the maximum delinquency on the account reported in September 2015. Thus, viewing the credit report objectively, there is no possible way that a reasonable creditor would believe that Plaintiff was [30] days late on a $0 balance. (citations omitted)); see also Deonarine v. TransUnion, LLC, et al., (attached to Truist Bank's Motion as Exh. 2 (Doc. # 39-2)), No. 6:21-cv-1278-GAP-GJK, at p. 7-8 (M.D. Fla. Dec. 13, 2021) (dismissing identical claims against a CRA and an information furnisher as without merit because no reasonable creditor

would believe the account was currently 120 days past due and the report was not misleading as a matter of law).

Weeks tries to overcome this hurdle by alleging that the allegedly inaccurate information is being used to calculate his credit score, and a lower credit score could impact his creditworthiness. But this argument has been rejected by multiple courts. See Deonarine, Doc. # 39-2 at 8; Pineda, 2021 WL 5798282, at *3; O'Neal, 2021 WL 4989943, at *3. As explained by the court in O'Neal:

> [S]uch allegations "completely ignore[] Eleventh Circuit case law and the requirements of the FCRA [because] . . . the Eleventh Circuit's decisions in Cahlin and Erickson instruct lower courts to consider 'objectively reasonable interpretations of the report.' How third-party companies choose to utilize algorithms to decipher the accurate information reported by Defendant has no bearing on the accuracy of the report itself. Plaintiff essentially posits that Trans Union is required to 'report only that information which is favorable or beneficial to the consumer[,]' which runs directly afoul of Eleventh Circuit precedent and the FCRA.

O'Neal, 2021 WL 4989943, at *3. The Court agrees and adopts the reasoning of the O'Neal court in this case.

In his Responses, Weeks raises new factual allegations pertaining to a car accident, specifically that after the subject vehicle was "totaled," his automobile insurance carrier assured him it would pay off the vehicle loan (the Account), and that the insurer did pay off the Account in

15

full "as of January 9, 2018." (Doc. # 46 at 1; Doc. # 45-1). Weeks also provided purported copies of his Trans Union and Equifax credit reports dated June 11, 2021. (Doc. # 45-1 at 6-7).

Trans Union asks this Court to strike both the Response and the new bureau report exhibit. (Doc. # 56). While the Court does not believe that "striking" the response is warranted, it has treated Trans Union's motion as an objection, which it will review on the merits.

As both Defendants point out, Weeks uses his affidavit to pinpoint, for the first time, January 9, 2018 as the date the Account was purportedly satisfied, whereas the complaint pled that it was satisfied "in or about January 2018." Weeks uses this new allegation to bootstrap his argument that it would therefore be impossible for the Account to be "30 days past due" on January 31, 2018 (the date Truist Bank allegedly furnished Account information to the CRAs) or on January 16, 2018 (the date the Account was closed out).

These new allegations do not help Weeks for several reasons. First, it is improper for a plaintiff to attempt to amend the allegations in his complaint through a brief in opposition. See Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) (explaining that a plaintiff

cannot amend a complaint through a brief). The Court therefore will not consider them in resolving the Motions to Dismiss.

What's more, even if this Court were to consider these new allegations, they don't push his complaint past the Rule 12(b)(6) bar because this new allegation still does not render the reports misleading when viewed in their entirety.

The Trans Union report, in addition to the information already discussed, also contains a notation: "Maximum Delinquency of 30 days in 12/2017 and in 01/2018." (Doc. # 36-1 at 4). Thus, it is not incorrect or misleading to state that there was a "maximum delinquency" of 30 days, even if the Account was paid only a few days late. See Pineda, 2021 WL 5798282, at *3 n.3 (finding that similar allegations did not "move the ball" because the credit report at issue noted that "30 days is the *maximum* delinquency on the account in September 2015, which is accurate and not misleading"). Similarly, while the Equifax report indicates that the report was "30-59 days past due" as of December 2017 (Doc. # 39-1), the "Account History Status Code Descriptions" do not contain a code for 0-30 days past due – it starts at the 30-59 days mark. (Id.). Thus, it is logical that by marking the code "1" (meaning 30-59 days past due), a reasonable investor viewing

17

the report would know that it really means that the account was anywhere from 0 to 69 days past due at that time.

As to the June 2021 "credit reports" that Weeks attaches to his Responses, Trans Union objects to their completeness and authenticity. (Doc. # 56 at 4-5). As Trans Union points out, this is an Experian three-bureau (tri-merge) report and, as such, was not issued directly by Trans Union or Equifax and is missing certain pertinent information. This argument is well taken, and the Court will not consider this exhibit.[2] See SFM Holdings, 600 F.3d at 1337 ("In ruling on a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged."); see also Zotta v. Nationscredit Fin. Servs. Corp., 297 F. Supp. 2d 1196, 1205 (E.D. Mo. Dec. 22, 2003) (determining that plaintiffs' FCRA claim failed because they "have no evidence that an Experian report – as opposed to a tri-merge report, which Experian did not issue – was seen by a third party"); Troy v. Equifax Info.

---

[2] Even if the Court were to consider this exhibit, it would not carry the day for Weeks because this report still shows that the account is closed with a $0 balance after becoming delinquent in December 2017. Viewing this document in its entirety and in conjunction with the reports furnished by Trans Union and Truist Bank, the Court does not find even the credit reports submitted by Plaintiff to violate the FCRA.

Servs. LLC, No. CV-20-01447-PHX-SPL, 2021 U.S. Dist. LEXIS 242328, at *19 (D. Ariz. Dec. 17, 2021) (rejecting plaintiff's reliance on a "tri-merge report" as the sole basis for his FCRA claim because the tri-merge report alone did not demonstrate that the defendant CRA's actual credit report contained an inaccuracy that was viewed by a creditor).

In sum, Trans Union's Motion to Dismiss is due to be granted.

### C. **Truist Bank's Motion to Dismiss**

Weeks has asserted one claim against Truist Bank, for an alleged violation of 15 U.S.C. § 1681s-2(b).

The FCRA requires entities that furnish information to CRAs, such as Truist Bank, to furnish accurate information. 15 U.S.C. § 1681s-2(a)(1)(A). Once such entities receive notice of a dispute regarding the completeness or accuracy of any information, the entity must conduct an investigation, review all relevant information, and report the results of the investigation to the CRA. Id. § 1681s-2(b)(1)(A)-(C). If the investigation finds information to be inaccurate or incomplete, the reporting entity must modify, delete, or permanently block that item of information. Id. § 1681s-2(b)(1)(E).

Here, Weeks alleges that Truist Bank violated this duty by "failing to conduct a reasonable investigation, and re-reporting misleading and inaccurate information." (Doc. # 1 at ¶ 105).

The statute contemplates three possible outcomes of a satisfactory investigation: (1) the information is accurate and complete; (2) the information is inaccurate or incomplete; or (3) the information cannot be verified. Felts v. Wells Fargo Bank, N.A., 893 F.3d 1305, 1312 (11th Cir. 2018). Whether the furnisher has satisfied its obligations under Section 1681s-2(b) is reviewed under a reasonableness standard. Id. "When a furnisher ends its investigation by reporting that the disputed information has been verified as accurate, the question of whether the furnisher behaved reasonably will turn on whether the furnisher acquired sufficient evidence to support the conclusion that the information was true." Id. (internal quotation marks omitted). Additionally, the Eleventh Circuit has declared that a Section 1681s-2(b) claim "cannot survive a motion to dismiss without some supportable allegation that the reported information is inaccurate or incomplete." Leones v. Rushmore Loan Mgt. Servs., LLC, 749 F. App'x 897, 901 (11th Cir. 2018).

The Court has already discussed the Account information as reported in the Trans Union credit report. It now turns to the Account information as reflected in the Equifax credit report. (Doc. # 39-1).



The Account reflects under activity designator: "Paid and Closed." The Account became delinquent in December 2017 and was closed in January 2018 with a $0 balance. Under "status," the Account reflects: "30-59 Days Past Due." And under "additional information," the report states: "Closed or Paid Account / Zero Balance."

Like the Trans Union credit report, when viewed in its entirety, Weeks's Equifax credit report was accurately reported and was not misleading. See Felts, 893 F.3d at 1313 ("Felts cannot prevail on her claim against Wells Fargo pursuant to § 1681s-2(b) of the FCRA without identifying some fact in the record establishing that the information Wells

Fargo reported regarding her account was inaccurate or incomplete").

Taking an objective view of the entirety of the report, it is apparent that the account is paid and closed. Other courts have rejected FCRA claims under similar circumstances. See Deonarine, (Doc. # 39-2 at p. 7-8) (dismissing similar claims against an information furnisher); see also Hunt v. JPMorgan Chase Bank, Nat'l Ass'n, 770 F. App'x 452, 458 (11th Cir. 2019) (noting that a plaintiff "must show a factual inaccuracy rather than the existence of disputed legal questions to bring suit against a furnisher under § 1681s-2(b)").

For these reasons, and for the reasons enunciated with respect to Trans Union's Motion, Truist Bank's Motion to Dismiss is due to be granted.

## IV.  **Conclusion**

In sum, Trans Union's reporting of Weeks's Account was accurate and not misleading. Weeks has therefore failed to plead a viable claim under the FCRA. Further, because the text of the credit reports is not in dispute, and it is derogatory but not materially inaccurate, amendment of these claims would be futile. Allowing Weeks leave to amend to add the new allegations that he attempted to wedge in through his

Responses also would not give rise to a viable FCRA claim, for the reasons explained herein.

Because Weeks cannot establish inaccuracy or falsehood in the reports, his claims against Trans Union and Truist Bank are due to be dismissed with prejudice. See Lacey, 2021 WL 2917602, at *6 (dismissing similar claims with prejudice); Smith, 2021 WL 3111583, at *2 (same); see also Silberman v. Miami Dade Transit, 927 F.3d 1123, 1133 (11th Cir. 2019) (explaining that while leave to amend ought generally to be freely granted, leave to amend need not be granted when any amendment would be futile). Accordingly, both Motions to Dismiss are due to be granted and Weeks's claims against those Defendants dismissed with prejudice.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1) The Motion to Dismiss filed by Defendant Trans Union LLC (Doc. # 36) is **GRANTED.**

(2) The Motion to Dismiss filed by Defendant Truist Bank (Doc. # 39) is **GRANTED.**

(3) Defendant Equifax Information Services, LLC's Motion for Joinder (Doc. # 54) is **DENIED.**

(4) Trans Union's Motion to Strike (Doc. # 56) is **DENIED.**

(5)   This action is dismissed with prejudice as to Trans Union
      and Truist Bank. The case shall proceed as to the claims
      against Equifax.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this
<u>7th</u> day of March, 2022.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE